TERRELL, Justice.
This makes about a half dozen times some phase of this case has made its appearance in this Court. King v. Streit, 51 So.2d 196; Streit v. King, 54 So.2d 522; King v. Streit, 58 So.2d 880, and 58 So.2d 886; King v. Streit, 60 So.2d 295. The litigation has to do with sale of the capital stock of Maulé Industries, a partnership, most of which was owned by the Maulé family, composed of Kathryn Maulé, the widow of E. P. Maulé, their four daughters and their husbands.
It appears that in 1950, members of the Maulé family owned 440,00.0 shares of stock of Maulé Industries and that Eleanor Maulé Gerken, one of the sisters, owned 117,000. In February 1950, C. B. King, John H. Gerken and M. F. Pafford made a contract with J. Bradley Streit to sell him (Streit) 440,000 shares of the capital stock of Maulé Industries. This contract was subsequently amended to provide for a voting trust, for cancellation of the first instrument and for other purposes not necessary to detail. The litigation cited in the first paragraph of this opinion had to do with said contract which ultimately resulted in requiring specific performance.
This suit was instituted by Eleanor Ger-ken in December 1951 against appellees as defendants. Her bill of complaint alleges that she owns 117,295 shares of stock and $164,499 of mortgage bonds in Maulé Industries. The bill then recites that at the time said contract was executed, King, Paf-ford and Gerken did not own 440,000 shares of said stock but that they entered into said contract on the assumption that they could induce her to furnish them her stock and bonds to enable them to carry out the contract.
In November 1951, Gerken engaged in a heated argument with Eleanor Gerken, his wife, in which he insisted that if she refused to let him use her stock and bonds to carry out the contract with Streit he would be incarcerated in the county jail of Dade County for failure to perform the contract in compliance with the decree for specific performance referred to in the forepart of this opinion. Gerken urged and pleaded until appellant became emotionably disturbed and shocked on account of the pressure imposed on her and the fact that Ger-ken was headed for a term in hoosegow where she would have to serve him Christmas dinner, account of which prospect she finally succumbed to the duress and endorsed her stock certificates and permitted her husband to use them. She asserts however, that she did so in the firm belief that on account of her husband’s high blood pressure and poor health it was the only way she could save him from a crisis and her family from disgrace, account of his residence in the hoosegow.
The bill also alleges that Streit, McDonald and Company, King, Pafford and' Gerken knew prior to delivery that appellant’s stock and bonds were delivered under duress and the circumstances which led to the duress. The bill prayed for injunc-tive relief and for return of her stock and bonds. Streit answered the bill, pointing out that King, Pafford and Gerken held themselves out as representing the Maulé family and that he knew appellant owned a portion of the stock and bonds. He denied any knowledge of the manner in which Gerken secured Mrs. Gerken’s stock. He asserted that Mrs. Gerken knew of the contract to sell the stock and bonds, that she knew it contemplated the use of her stock and bonds and that she at no time expressed unwillingness to use them or in anywise protested her disagreement with the contract.
King, Pafford, Gerken and Maulé Industries also filed an answer in which they admitted appellant’s interest in Maulé Industries of which they say Streit was informed, that Pafford, King and Gerken owned 136,399 shares of the stock and that they contemplated acquiring additional shares, but failed. Other matters in confession and avoidance were embraced in the answer. On the issues so made testimony was taken and the chancellor found that Streit and McDonald and Company had no knowledge of the duress imposed on Mrs.. Gerken. He denied injunctive relief, found the equities to be with appellees and dismissed the bill of complaint. We are con *247 fronted with an appeal from the final decree.
The point for determination is whether or not Gerken secured the endorsement and use of his wife’s stock and bonds in Maulé Industries by duress in order to carry out the contract of sale made by King, Gerken and Pafford to Streit.
We have examined the record carefully and find ample support for the finding and decree of the chancellor. After all the litigation, the procedural sparring and family fingers inserted in the pie, incident to the final decree of the chancellor, it seems a little incredible for Mrs. Gerken to now contend that she was unadvised of the situation and was coerced to turn over her stock and bonds to Gerken. The chancellor did not believe her version of the transaction and we find no reason to overthrow his decision. The evidence of duress is not at all convincing but if the ground on which it was claimed had been proven conclusively, to permit it to defeat the sale under the facts shown, would be tantamount to permitting her to interpose what was once known in common parlance as plea of the '.baby act to be a complete defense in a case like this.
Such a defense reminds one of Bumble in Oliver Twist when he comes up with the sage remark — “If the law presumes that what the wife does in the presence of her 'husband she does under compulsion the law is an ass and a bachelor”. But there is a -perfectly good reason in equity why this defense should not be permitted. King Gerken and Pafford represented themselves • as speaking for the Maulé family. The •chancellor so found and that Streit thought they were dealing bona fides. Streit did not know of Mrs. Gerken’s claim and there is no charge or showing that Streit coerced Mrs. Gerken or knew anything of the ■coercion.
We find no reason to visit the charge of •coercion on Streit so the judgment appealed .from is affirmed.
Affirmed.
ROBERTS, C. J., and SEBRING and iMATHEWS, JJ., concur.